**FILED**
**JULY 14, 2020**
**In the Office of the Clerk of Court**
**WA State Court of Appeals, Division III**

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In re Parentage of: | ) | No. 36916-1-III |
| | ) | |
| J.C.N.† | ) | |
| | ) | |
| Minor Child, | ) | |
| | ) | |
| MIRANDA GARRAHAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant, | ) | |
| | ) | |
| CODY NELSON, | ) | |
| | ) | |
| Respondent. | ) | |

LAWRENCE-BERREY, J. — Miranda Garrahan appeals after the trial court denied

her request to reconsider aspects of the parenting plan entered by the court. She argues

the trial court erred (1) by prospectively denying her the right to relocate with J.C.N.

absent a finding of a limiting factor, (2) by inequitably granting Mr. Nelson visitation for

every school-year weekend including Monday holidays, and (3) when it declined to find

the presence of a limiting factor on Mr. Nelson. We disagree and affirm.

---

† To protect the privacy interests of the minor child, we use his initials throughout
this opinion. General Order for the Court of Appeals, *In re Changes to Case Title*,
(Aug. 22, 2018), effective Sept. 1, 2018.

No. 36916-1-III
*In re Parentage of J.C.N.*

FACTS[1]

Miranda Garrahan and Cody Nelson became romantically acquainted in 2010 and began living together in Mr. Nelson's mother's home. On July 23, 2011, J.C.N. was born. At the time of trial, J.C.N. was seven years old and enrolled in Whitman Elementary School in Spokane, Washington.

Ms. Garrahan and Mr. Nelson lived in Mr. Nelson's mother's home until they separated in 2013. At that time, Mr. Nelson moved into the garage and lived there until 2016.

Mr. Nelson developed a romantic relationship with Kathleen Kearney. They eventually married. Ms. Garrahan continues to live with Mr. Nelson's mother. She is in a romantic relationship with Adam Brant. Mr. Brant lives in nearby Medical Lake with his three children.

J.C.N. has experienced behavioral problems. Counseling has helped some of these problems. J.C.N. is extremely close with his paternal grandmother, with whom he has resided his entire life.

---

[1] Because there are no written findings of fact, we derive our facts from the trial court's oral ruling, which preceded entry of the parenting plan and its subsequent letter ruling denying reconsideration.

Ms. Garrahan petitioned for entry of a parenting plan and to relocate from Spokane to Medical Lake. She believes the quality of the schools are similar and the small town atmosphere would help J.C.N.

The trial court made the following findings with respect to RCW 26.09.187's parenting plan factors:

> Under RCW 26.09.187, there are many factors that the Court has to weigh in creating a parenting plan. These factors include the relative strength, nature, and stability of the child's relationship with each parent, and any agreement of the parties, each parent's past and potential for future performance of parenting functions, the emotional needs and developmental level of a child, the child's relationship with others, the employment schedule of the parents, and the wishes of the parents and the wishes of a child who is sufficiently mature to express a reason and independent preference as to his residential schedule.
>
> In looking at these factors, it's obvious that [J.C.N.] is not sufficiently mature enough to express a reason and independent preference for his schedule; therefore, the Court will only analyze the remaining factors.
>
> Factor number one is the relative strength, nature, and stability of the child's relationship with each parent. Both parents have a strong and stable relationship with [J.C.N.], although in different ways. Ms. Garrahan has taken a lead in parenting obligations whereas Mr. Nelson tends to have a relationship based more or less upon activities. This factor is generally neutral.
>
> Factor number three is each parent's past and potential for future performance of parenting functions. The history of each parent's parental functions is clear. The best way to gauge the future performance of parenting functions is to look at the past. Mr. Nelson took the lead as a parent when Ms. Garrahan was employed as a dental hygienist. Recently, Ms. Garrahan has been the parent who's provided greater parenting functions. While [J.C.N.] is in either parent's care, his needs are met.

3

One aspect of parenting that stood out was the—was Mr. Nelson's comment about how much fun [J.C.N.] had while with his father. This Court doesn't gauge a parent's ability to provide for their children by looking at the amount of fun a child is having. In many cases, like this one, a child needs structure and discipline. So when structure and—when structure and discipline are removed, a child may tend to act out.

In looking at the totality of the facts, this factor tends to weigh in favor of Ms. Garrahan.

Factor number four is the emotional needs and developmental level of the child. And this factor is perhaps the most important of them all.

Given [J.C.N.'s] current behavioral issues, a parenting plan must be developed that creates a structure and stability for him. Since a temporary parenting plan went into effect, [J.C.N.] has greatly improved.

A 50/50 parenting plan would place [J.C.N.] into a chaotic situation. Each week he would reside with a different parent, have different routines in preparing for school and in returning to school and for completing his homework. More concerningly, allowing [J.C.N.] to move to Medical Lake would prove detrimental. He would leave the only school district he's ever known, be placed in a new environment, compete for attention among three other children, and be away from, perhaps, the most stable person in his life, which is his grandmother. The parenting plan will be entered that takes into account this most important factor.

Factor number five is the child's relationship with others. The Court previously commented on this factor, and a parenting plan can be entered that assists in maintaining these relationships.

Factor number six is the employment schedule of the parents. Mr. Nelson is unemployed, therefore, he's able to parent at any time. Ms. Garrahan cares for Mr. Nelson's mother and attends school online. She's also able to parent at any time. Her schedule may change once she graduates and obtains full-time employment. Currently, both parents have flexible schedules.

Factor number seven is the wishes of the parents. The wishes of the parents are clear, and the Court has taken those wishes into consideration.

The second factor I neglected to comment on is factor number two, which is any agreement of the parties. There doesn't appear to be a whole

> lot of agreement between the parties, but where there is agreement, the
> Court will give those agreements some deference.

Report of Proceedings (RP) at 8-12.

The trial court entered a parenting plan that provides different schedules depending upon whether J.C.N. is in school or on summer break. During the school year, the parenting plan grants Ms. Garrahan primary residential placement and Mr. Nelson weekend visitation, including Monday holidays. During the summer break, the parenting plan places J.C.N. with Mr. Nelson the first week and then alternates placement each week until school resumes. However, if Ms. Garrahan chooses to live outside the Whitman Elementary School boundary, the parenting plan flips and grants Mr. Nelson primary residential placement, and Ms. Garrahan weekend visitation, including Monday holidays.

In its oral ruling, the court clarified that Ms. Garrahan could request a modification of the parenting plan if she desires to relocate in the future. Paragraph 13 of the parenting plan explicitly incorporates standard language explaining to the parties their rights and the process to follow should the primary residential parent desire to relocate with a child.

The court declined to find that Mr. Nelson engaged in abusive use of conflict. The trial court recognized that neither party came to court with clean hands—they both created conflicts with J.C.N. Both parents criticize the other.

*Reconsideration request and denial*

Ms. Garrahan filed a motion for reconsideration. She argued the court erred: (1) by prospectively modifying the parenting plan (should she choose to relocate outside the school district) without considering the relocation factors in RCW 26.09.520, (2) by giving Mr. Nelson all three-day weekends during the school year, and (3) by not finding that Mr. Nelson exercised abusive use of conflict and entering parental restrictions under RCW 26.09.191.

The trial court denied Ms. Garrahan's motion. With respect to her first argument, the trial court reasoned that the factors it analyzed under RCW 26.09.187 are the same or similar as the relocation factors under RCW 26.09.520. The court added, consistent with its oral ruling, that the detrimental effect of relocation outweighed the benefit of change to Ms. Garrahan and J.C.N. In addition to reciting its earlier oral findings, which discussed how moving would harm J.C.N., the court added:

> Ms. Garrahan's boyfriend, with whom she wishes to reside, is the restrained party in an anti-harassment order, protecting Mr. Nelson. According to Ms. Garrahan's own testimony, [J.C.N.] has difficult[y] adjusting to change. Here, she seeks to change his residence, school, with whom he resides, and town in which he resides.

Clerk's Papers (CP) at 64.

6

With respect to her second argument, the trial court noted that the law does not require equal residential time, and because "Ms. Garrahan was granted a majority of time with [J.C.N.], that it was in the best interest of [J.C.N.] to be with Mr. Nelson during the weekends." CP at 64.

With respect to her third argument, the trial court reiterated that neither party came to court with clean hands. It also refused to consider additional unsworn accusations contained in Ms. Garrahan's reconsideration motion.

Ms. Garrahan appealed the trial court's denial of her reconsideration motion.

ANALYSIS

Ms. Garrahan contends the trial court erred when it denied her motion for reconsideration.

We review a trial court's decision on a motion for reconsideration for an abuse of discretion. *Rivers v. Wash. State Conference of Mason Contractors*, 145 Wn.2d 674, 685, 41 P.3d 1175 (2002). "An abuse of discretion occurs only when the decision of the court is 'manifestly unreasonable, or exercised on untenable grounds, or for untenable reasons.'" *State v. McCormick*, 166 Wn.2d 689, 706, 213 P.3d 32 (2009) (quoting *State ex rel. Carroll v. Junker*, 79 Wn.2d 12, 26, 482 P.2d 775 (1971)).

*Prospective denial of relocation*

Ms. Garrahan first argues that the trial court erred by prospectively denying her right to relocate with J.C.N. She argues this denial is inconsistent with her statutory right to relocate.

Under the "Child Relocation Act," chapter 26.09.405-.560 RCW, when parents share residential time, the parent with primary placement must provide notice of any intention to relocate. RCW 26.09.430. By statute, there is a rebuttable presumption that a custodial parent's request to relocate will be allowed. RCW 26.09.520. The nonrelocating party may object. RCW 26.09.560. "'[T]he [Child Relocation Act] both incorporates and gives substantial weight to the traditional presumption that a fit parent will act in the best interests of [his or] her child.'" *In re Marriage of Horner*, 151 Wn.2d 884, 895, 93 P.3d 124 (2004) (quoting *In re Custody of Osborne*, 119 Wn. App. 133, 144, 79 P.3d 465 (2003)).

"A person entitled to object to the intended relocation of the child may rebut the presumption by demonstrating that the detrimental effect of the relocation outweighs the benefit of the change to the child and the relocating person, based upon [11 statutory factors]." RCW 26.09.520. These factors are unweighted and none is more important than the other. *Id.*; *Marriage of Horner*, 151 Wn.2d at 894.

8

We disagree with Ms. Garrahan's portrayal of the parenting plan. The parenting plan does not prospectively deny her statutory right to relocate with J.C.N. Paragraph 13 of the parenting plan explicitly permits Ms. Garrahan the right to relocate with J.C.N. in accordance with RCW 26.09.520.

In denying her reconsideration motion, the trial court expressly found that the evidence presented at trial rebutted the statutory presumption that Ms. Garrahan's desire to relocate should be allowed. The trial court's decision was based on the evidence presented at trial. This decision is nonbinding in a subsequent request to relocate based on new and additional evidence—especially if Ms. Garrahan presents substantial evidence that relocation would not be harmful to J.C.N. The trial court's oral and written comments alert Ms. Garrahan of its legitimate concerns, which must be overcome in a subsequent request to relocate.

*Residential schedule*

Ms. Garrahan contends the trial court erred by ordering a residential schedule that awarded all school-year weekends to Mr. Nelson, including Monday holidays. She cites no authority for her argument. We agree with the trial court: residential schedules do not have to be equal under RCW 26.09.187. The trial court did not abuse its discretion by denying reconsideration of the residential schedule.

9

No. 36916-1-III
*In re Parentage of J.C.N.*

*Abusive use of conflict*

Ms. Garrahan contends the trial court erred by not imposing restrictions against Mr. Nelson for abusive use of conflict. However, Ms. Garrahan has failed to provide us with a transcript of any trial testimony and this failure prevents us from reviewing the facts and addressing her contention.

A trial court's decision is presumed to be correct and should be sustained absent an affirmative showing of error. *State v. Wade*, 138 Wn.2d 460, 464, 979 P.2d 850 (1999). The party presenting an issue for review has the burden of providing an adequate record to establish such error. RAP 9.2(b). Although an appellate court may supplement the record on its own initiative, we may instead "'decline to address a claimed error when faced with a material omission in the record.'" *State v. Sisouvanh*, 175 Wn.2d 607, 619, 290 P.3d 942 (2012) (quoting *Wade*, 138 Wn.2d at 465). Ms. Garrahan's failure to provide a transcript of any trial testimony warrants us declining review of this claim of error.

No. 36916-1-III
*In re Parentage of J.C.N.*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Pennell, C.J.                                              Fearing, J.

11